UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. 19-cr-10117-IT |
| | * | |
| GREGORY ABBOTT, et al. | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

September 13, 2019

TALWANI, D.J.

This Memorandum addresses the advisory United States Sentencing Guidelines (the "Guidelines") that may be applicable in sentencing Defendants in this matter.

I.   Background

At sentencing, the court is required to consider and take into account the sentencing range for the offense committed, as set by the United States Sentencing Commission. United States v. Booker, 543 U.S. 220, 264 (2005); see also 18 U.S.C. § 3553(a)(4)(A) (in sentencing, the court must consider "the applicable category of offense committed . . . as set forth in the guidelines"). "The Guidelines are not the only consideration, however," and are effectively advisory. Booker, 543 U.S. at 246. Accordingly, after determining the applicable Guideline, and "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party." Gall v. United States, 552 U.S. 38, 49 (2007). In so doing, the court "may not presume that the Guidelines range is reasonable," and "must make an

individualized assessment based on the facts presented." Id. at 50 (citing Rita v. United States, 551 U.S. 338, 351 (2007)).

The starting point, however, is a correct Guidelines calculation. "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Id. at 49 (citing Rita, 551 U.S. at 347-48). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Id.

In this case, the court's Probation Office, in connection with preparing Presentence Reports (see Fed. R. Crim. P. 32(d)), calculated the applicable base guideline offense level for the offense charged as a level 7. The Probation Office further determined that there were no specific offense characteristics under the applicable guidelines to increase or decrease the base level. After the United States Attorney notified the court that "there is significant disagreement between the parties and Probation on the applicable offense level," see Letter [#411], the court held a hearing to consider the applicable offense level under the Guidelines. The court has also reviewed the government's Memorandum Regarding Methodology for Calculating Gain or Loss Under the Sentencing Guidelines [#420], [#422], the Response [#429] filed by Defendant Marjorie Klapper, the Response [#432], [#435] filed by Defendant Semprevivo, and the Probation Office's Responsive Submission [#440] to the government's objection 1, excerpted from the most recent PSR.

II.     The Applicable Guideline

The Guidelines direct the court to first "[d]etermine, pursuant to § 1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction" and then "[d]etermine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the

particular guideline in Chapter Two in the order listed." United States Sentencing Commission, Guidelines Manual § 1B1.1(a)(1), (2) (2018) (USSG).

To determine the applicable guideline section, the court uses the offense of conviction—that is, the offense conduct charged in the count of the indictment or information of which the defendant was convicted—unless the plea agreement stipulates to a more serious offense. USSG § 1B1.1(a). Here, in their plea agreements, the Defendants stipulate only to the offense charged in the Information [#312], violation of 18 U.S.C. § 1349, conspiracy to commit mail fraud and honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346. The Defendants do not stipulate to a different offense. Information [#312]. The Guidelines direct the court to use the Statutory Index to determine the Chapter Two offense guideline, but if the offense involved a conspiracy, to refer to USSG § 2X1.1 (Attempt, Solicitation, or Conspiracy) as well as the guideline referenced in the Statutory Index for the substantive offense. USSG § 1B1.2(a). USSG § 2X1.1(a) directs the court to use the base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty. The substantive offense of mail fraud under 18 U.S.C. § 1341—which penalizes a "scheme or artifice" to defraud using the mail—is listed with a reference to USSG §§ 2B1.1 and 2C1.1. USSG Appendix A. The substantive offense at 18 U.S.C. § 1346 provides that the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services, and has no separate reference.

The Commentary to USSG § 2C1.1 states that the provision should be used for violations of 18 U.S.C. § 1341 "if the scheme or artifice to defraud was to deprive another of the intangible

3

right of honest services of a public official." Here, no public official was involved, and accordingly, this section is not applicable.

The remaining Guideline, USSG § 2B1.1, is thus the applicable guideline.[1] Under USSG § 2B1.1(a), the base offense level for an offense that has a statutory maximum term of imprisonment of 20 years or more is level 7.

The next step is to determine if a specific offense characteristic applies. The government argues that the court should increase each Defendant's offense level based on the loss table set forth at USSG § 2B.1.1(b)(1). Application Note 3 explains that the loss is the greater of actual loss—that is, the "reasonably foreseeable pecuniary harm that resulted from the offense"—or the intended loss—which is the "pecuniary harm that the defendant purposefully sought to inflict." App. Note 3(A)(i), (ii). "Pecuniary harm" in turn means "harm that is monetary or that otherwise

---

[1] Although the government has agreed in the plea agreements here that USSG § 2B1.1(a) applies, the government still contends that "the First Circuit and at least four other circuits have in similar circumstances applied USSG Section § 2B4.1." See Government Mem. 14 and n. 25 [#422] (citing United States v. Poirer, 321 F.3d 1024, 1035 (11th Cir. 2003); United States v. Rybicki, 38 F. App'x 626, 633 (2d Cir. 2002); United States v. Montani, 204 F.3d 761 (7th Cir. 2000); United States v. Josleyn, 99 F.3d 1183, 1198 (1st Cir. 1996); United States v. Winters, 62 F.3d 1418, 1995 WL 462415 (6th Cir. Aug. 3, 1995) (unpublished); United States v. Kelly, No. 17-cr-547001-RWS, 2018 WL 2411593, at *4 (S.D.N.Y. May 29, 2018) (unpublished); United States v. Hendershot, 150 F.Supp. 2d 965, 968 (N.D. Ill. 2001). The court is required, however, to use the version of the guidelines in effect at the time of sentencing. USSG § 1B1.11(a). Accordingly, the version the court must apply is the 2018 version. Appendix A in the current Guidelines does *not* list USSG § 2B4.1 as an offense guideline for 18 U.S.C. § 1341. All but one of the cases cited by the government are analyzing earlier versions of the Guidelines and not the language presently at issue. Material changes since the earliest of these cases include: (1) the November 2000 Amendment to the Sentencing Guideline, which amended USSG § 1B1.2, a clarification "intended to emphasize that the sentencing court must apply the offense guideline referenced in the Statutory Index for the statute of conviction" unless a limited exception applies; (2) the November 2001 Amendment which replaced a former § 2B1.1 with entirely new language and a different listing for 18 U.S.C. § 1341 in the Appendix; and (3) the November 2004 Amendment which amended USSG § 2C1.1, and again gave a different listing for 18 U.S.C. § 1341 in the Appendix. The single district court case that post-dates these amendments, Kelly, 2018 WL 2411593, at *4, simply asserts that USSG § 2B4.1 applies, without a word of analysis and is of no persuasive value.

is readily measurable in money," and accordingly, "does not include emotional distress, harm to reputation, or other non-economic harm." App. Note 3(A)(iii). Excluded from any such loss are costs incurred by victims primarily to aid the government in the prosecution and criminal investigation of an offense. App. Note 3(D)(ii). The court "need only make a reasonable estimate of the loss." App. Note 3(C).

Here, the government argues that the universities and testing companies incurred pecuniary harm caused by harm to their reputations, investigations they undertook separate from the government's investigation, and the loss of the value of the honest services of their agents or employees. The first two categories may well be harm these institutions suffered, but do not amount to harm that is "reasonably foreseeable" and "readily measurable in money" and are thus excluded under the Application Notes. The loss of the value of the honest services of agents or employees is a more concrete harm, but even there, the court is hard-pressed to evaluate the value of those portions of the universities or testing companies' employees or agents whose services were compromised by each Defendant.

The government acknowledges that any loss incurred by the universities and testing companies cannot be determined. It points to Application Note 3(B) providing that the court "shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." But even assuming that there is a pecuniary loss that reasonably cannot be determined, the record does not support the government's argument that the amounts paid by the Defendants are "gains" under the Guidelines. Certainly, the Defendants before the court did not "gain" these amounts, but instead paid them to a co-conspirator. Nor did the conspiracy as a whole gain these moneys. Instead, the amounts were passed between the co-conspirators, and cannot stand in as an alternative measure for any loss

incurred by the universities or testing companies. The cases cited by the government do not suggest otherwise. See United States v. Offill, 666 F.3d 168, 173 (4th Cir. 2011) (measuring loss by using the millions of dollars the conspirators gained by selling shares of stock to the public); see also United States v. Gordon, 710 F.3d 1124 (10th Cir. 2013) (same).

    III.    Conclusion

In sum, the court finds no specific characteristics under the Guidelines to increase the applicable base offense level of 7. The court's determination of the applicable Guidelines, however, does not end the inquiry. The final sentence will be determined with consideration of all of the factors set forth at 18 U.S.C. § 3553(a).

IT IS SO ORDERED.

September 13, 2019

                                            /s/ Indira Talwani
                                            United States District Judge